Case 4:18-cv-01312   Document 43   Filed on 07/19/19 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO SCOGGINS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-01312 |
| | § | |
| CITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, City of Houston (the "City") motion for summary judgment (Dkt. No. 28) and the Houston Police Officers', Angel Arriaga, Michael J. Stubbs, Andrew Maldonado, Christina LaFour, Robert Estrada, John Montgomery, and Charles Landrumill's (the "officers") (collectively, "the defendants"), motion for summary judgment (Dkt. No. 31).  Also, before the Court is the plaintiff's, Antonio Scoggins' (the "plaintiff") response (Dkt. No. 34). The City's motion for summary judgment is **DENIED** as to the plaintiff's ratification claim and **GRANTED** as to the plaintiff's remaining claims.  The officers' motion for summary judgment is **DENIED** as to the plaintiff's Fourth Amendment and failure to intervene claims and **GRANTED** as to the plaintiff's remaining claims.

**II.   FACTUAL BACKGROUND**

On March 30, 2016, officers Arriaga and Montgomery were driving when they heard the dispatcher report a disturbance call in the area where they were.  Seeing a man that fit the description of the individual described in a strip mall parking lot, they approached the plaintiff. When the two officers got out of their patrol car, officer Montgomery unholstered his gun,

pointed it at the plaintiff and ordered him to show his hands. The officers allege that the plaintiff dropped a crack pipe, raised his hands and walked toward them. Officer Montgomery then ordered him to get on the ground. The plaintiff complied. Next, the officers placed the plaintiff in handcuffs, and searched his person for narcotics. After not finding anything, they placed him in the back seat of the patrol car.

The individual that reported the disturbance was on the scene. He informed the officers that he had seen the plaintiff put a large amount of heroin in his pants. Subsequently, the plaintiff was removed from the car and searched again. The plaintiff and officer Montgomery both state that officer Montgomery felt around the plaintiff's groin area. Then, officer Montgomery pulled the plaintiff's pants and underwear waistbands away from his waist. He claims that he observed a plastic bag near the plaintiff's right groin and attempted to retrieve it. Both men state that the plaintiff began to lean forward. By this time officers Estrada and Stubbs had arrived on the scene. The plaintiff alleges that he leaned forward to prevent his genitals from being exposed and that the officers forced him to the ground. Officer Montgomery claims that the plaintiff "slowly" laid on the ground and turned on his back bringing his knees up to his chest in an attempt to keep the officers from retrieving the bag.

The plaintiff claims that next, officers Montgomery, Arriaga, Estrada and Stubbs pulled his pants down and ripped his underwear, exposing his genitals to public view. He adds that while handcuffed on the ground the officers struck his body. The plaintiff goes on to allege that after the bag was retrieved the officers attempted to search his anus. He explains that he began to clinch his "butt cheeks" and tightened his legs. He claims that the officers forced his legs and "butt cheeks" apart with their hands in an effort to find more drugs. The officers claim that this did not happen.

The officers maintain that the plaintiff continued to hinder them for accessing the bag. They claim that at one point he attempted to reach and get the bag. Officer Arriaga then placed his right knee on the plaintiff's head to keep the plaintiff from getting up. By this time officer Montgomery was on the plaintiff's back and officer Stubbs was holding the suspects legs down. Officer Montgomery was then able to obtain the bag. Subsequently, leg restraints were placed on the plaintiff.

Shortly thereafter, the plaintiff was placed back into the patrol car. When Sergeant Landrumill arrived on the scene he spoke to the plaintiff and advised the officers to remove the leg restraints. The plaintiff was arrested for possession of a controlled substance and transported to central jail where he was booked. He later filed a formal complaint with the Internal Affairs Division of the Houston Police Department (HPD).

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir.

1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)).

## IV. ANALYSIS & DISCUSSION

### A. Unreasonable Search and Excessive Force Claim

The plaintiff raises several claims against the City and officers under 42 U.S.C. § 1983. The plaintiff contends that the defendants deprived him of his rights when they conducted a search of his person during an arrest. When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The plaintiff claims that the search took place in a public parking lot and with unwarranted and unjustified physical force. The plaintiff alleges that excessive force was employed when his genitals were exposed and a body cavity search was performed on him. He adds that the searches were done without a warrant and were unreasonable under the circumstances. The plaintiff argues that there is a genuine issue of material fact as to whether the defendants' actions amount to an excessive and unreasonable use of force.

#### 1. The City

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged

with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Here, the plaintiff identifies Art. 18.24 of Tex. Code Crim. Pro., and HPD General Order 500-01 – Effecting Arrests and Searches (July 24, 2012), as an official policy. However, the policy provides guidelines at odds with the conduct alleged by the plaintiff against the defendants. For instance, the plaintiff alleges that the officers pulled down his pants, ripped his underwear and searched him in public. The policy states that all strip searches shall be done in private. Consequently, the policy is not the impetus for the officers' alleged actions. Since the policy is not the moving force of the alleged constitutional violation, the plaintiff must identify a custom.[1] *Pineda*, 291 F. 3d at 328. Local governments cannot be held liable under a theory of *respondeat superior* except when the constitutional deprivation asserted arises from a governmental custom. *See Id*. Here, the plaintiff has failed to identify a custom. Therefore, the City maintains that a municipality cannot be liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. The City adds that to have any liability, the City, itself must have acted wrongly, not simply its employees. The evidence fails to support a finding that the City established a policy apart from that adopted in HPD General Order 500-01. Therefore, this claim fails.

The plaintiff also argues that the City has failed to train, supervise and discipline its officers regarding performing searches and use of force. The Court will address these claims alternatively.

---

[1] Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691, 98 S. Ct. 2018, 2036, 56 L. Ed 2d. 611 (1978).

To prevail on a failure to train claim, the plaintiff must provide proof that inadequate or deficient training was deliberately adopted by the City's policymakers and such directly caused their injuries. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). The Court has reviewed the officers' training record reports included in record. The plaintiff, however, has failed to identify the deficiencies in the officers' training. Further, the plaintiff fails to provide any evidence that the City failed to train the officers on procedures regarding use force and search of persons. The plaintiff's evidence fails to establish a failure to train.

To prevail on a failure to supervise claim, the plaintiff must show that, (1) "[supervisory officials] failed to supervise the officers; a causal connection existed between the failure to supervise the officer; (2) a causal connection existed between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts*, 397 F.3d at 292. The plaintiff argues that the City, more specifically officer Landrumill failed to supervise the officers. Officer Landrumill, however, was not present at the scene and thus, did not oversee the encounter. The plaintiff has also failed to provide evidence regarding his failure to supervise claim.

*2. Officers Arriaga, Estrada, Montgomery and Stubbs*

The plaintiff contends that the officers' actions were unnecessary, unreasonable and an excessive use force against him. The defendants maintain that they are entitled to "qualified immunity" in this instance and thus, the burden should shift to the plaintiff to direct the court's attention to competent summary judgment evidence sufficient to establish that a genuine issue of material fact does indeed exist.[2] The plaintiff provides his sworn affidavit, in which he contends

---

[2] Qualified immunity shields the police officers who are acting within the scope of their discretionary authority and in the course of their official responsibilities from civil liability under 42 U.S.C. § 1983 so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *See Anderson v. Creighton*, 483 U.S. 635 (1987).

that officers Arriaga, Estrada, Montgomery, and Stubbs ripped his underwear exposing his genitals to public view. The plaintiff states that subsequently the officers conducted a body cavity search. The plaintiff states that the officers "forced [his] legs apart and spread [his] butt cheeks apart with their hands."

Although the officers deny that a body cavity search was conducted, their denial simply points to the fact that even the officers understand that a public cavity search without regard for the law and policy, exceeds all bounds of decency, and appropriateness. Even the officers' reports evinces that the plaintiff's "butt cheeks" were separated. How far the officers "went" is the matter in dispute. This alleged conduct also supports the plaintiff's claim that the City ratified the officer's violation of law and policy and was outside the scope of any discretionary authority available to the officers.

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Delta & Pine Land Co. v. Nationwide Agribusniess Ins. Co.* 530 F.3d 395, 398 (5th Cir. 2008). When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A vast discrepancy exists between the plaintiff and the defendants' accounts of what occurred during their interaction.

The Court finds that there are genuine issues of material fact with respect to whether the defendants violated the plaintiff's Fourth Amendment rights and whether the City ratified their conduct. Summary judgment in qualified immunity cases is appropriate only if "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a

matter of law. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). In this instance the movant officers and City have not done so. Accordingly, the Court denies summary judgment on the issue of whether the officers are entitled to qualified immunity for their conduct. The Court denies summary judgment with respect to the plaintiff's ratification claim. The plaintiff does not state what if any action taken by officers LaFour and Maldonado violated his rights. The plaintiff has failed to raise a genuine issue of fact regarding these two officers. Thus, the Court grants summary judgment as to the Fourth Amendment claim against officers LaFour and Maldonado.

### B.  Delay and Denial of Medical Care Claim

Claiming that approximately eight officers observed his injuries, the plaintiff argues that they failed to call an ambulance to assess his physical injuries. The plaintiff adds that he suffered serious bodily injury, specifically a laceration on his head. The officers contend that they have "qualified immunity" in this instance. To prevail on a delay or denial of medical care claim, the plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference. *Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 237-38 (5th Cir. 2009). In meeting the "extremely high standard" of deliberate indifference, the plaintiff must show that the defendant, officers engaged in some "conduct that would clearly evince a wanton disregard for any serious medical needs," including refusing to treat him, ignoring complaints of a serious medical need, or intentionally treating him incorrectly. *See Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001). For the plaintiff to establish a violation of his constitutional right to adequate medical care, he must allege and support with plausible facts that the deliberate indifference resulted in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Plaintiff has failed to do so.

Here, the plaintiff notes that he suffered an injury to his head during the arrest. He fails, however, to allege any harm—much less substantial harm—that resulted from the delay in treatment. Alleging deliberate indifference on the part of the officers is not enough. The plaintiff has failed to allege the requisite substantial harm. The plaintiff has not raised a material issue of fact as to the denial medical care. Summary judgment is appropriate.

### C. Failure to Intervene Claim

The plaintiff claims that officers Arriaga, Stubbs, Estrada, Montgomery, Maldonado and LaFour were present and witnessed the alleged strip search and body cavity search. He complains that as they watched the force being used against him they failed to intervene. An officer who does not directly conduct an unlawful search, but is present at the scene when such a search takes place, may be liable under the doctrine of "bystander liability." *See Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995). That liability attaches when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F. 3d 631, 646 (5th Cir. 2013). In the plaintiff's affidavit, he identifies officers Arriaga, Estrada, Montgomery, Stubbs as all being on the scene when officer Montgomery pulled his pants and underwear away from his waist. The plaintiff's claim against the officers is maintained.

According to the plaintiff's affidavit and officers' statements, officer's Maldonado and LaFour were not present during the alleged body cavity search. Consequently, they could not prevent the alleged search. Nowhere in the plaintiff's affidavit does he state that officers LaFour and Maldonado were present when the abuse occurred. Officer Maldonado admits to placing leg restraints on the plaintiff who was on the ground and kicking at the officers. The plaintiff, however, states that the officers forced his legs apart and spread his "butt cheeks" to conduct the

9 / 11

alleged body cavity search. Placing leg restraints on the plaintiff prior to the body cavity search would serve as counterintuitive to officers' efforts to search the plaintiff. The police statements provided by the officers all corroborate that Maldonado and LaFour did not witness the plaintiff's underwear being ripped or the cavity search. Thus, they were not in a position to prevent the alleged harm. Accordingly, the Court rejects the plaintiff's claim against LaFour and Maldonado. Summary judgment is granted as to officers LaFour and Maldonado.

### D. Assault and Battery and Intentional Infliction of Emotional Distress Claim

The plaintiff asserts state law claims against the defendants for assault and intentional infliction of emotional distress. Summary judgment is granted regarding the plaintiff's state-law claims against the officers pursuant to the Texas Tort Claims Act (the Act). TEX. CIV. PRAC & REM. CODE § 101.106 (e) (2010), *Pearlman v. City of Fort Worth, Tex*, 400 Fed. Appx. 956, 958 (Fifth Cir. 2010). The Act provides, "[i]f a suit is filed under this [Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Pearlman*, 400 Fed. Appx. at 958.

The plaintiff's state law claims against the City are barred by sovereign immunity. Under the doctrine of sovereign immunity, a city cannot be held liable for the actions of its employees unless a constitutional or statutory provision clearly waives sovereign immunity in unambiguous language. *See Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980). Although the Act waives sovereign immunity for certain torts, the intentional torts alleged by plaintiff fall outside that waiver. *Id*. Summary judgment is appropriate with regard to plaintiff's state law claims against the City.

## V. CONCLUSION

Based on the foregoing analysis and discussion, the City's motion for summary judgment is **DENIED** as to the plaintiff's ratification claim, and **GRANTED** as to the plaintiff's remaining claims. The officers' motion for summary judgment is **DENIED** as to the plaintiff's Fourth Amendment and failure to intervene claims and **GRANTED** as to the plaintiff's remaining claims.

It is so ORDERED.

SIGNED on this 19th day of July, 2019.

_____
Kenneth M. Hoyt
United States District Judge